# United States Court of Appeals
# for the Federal Circuit

---

**ERIC D. CUNNINGHAM,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5055

---

Appeal from the United States Court of Federal Claims in No. 10-CV-0111, Judge Lynn J. Bush.

---

Decided: April 9, 2014

---

JAMES Y. BOLAND, Venable LLP, of Tysons Corner, Virginia, argued for plaintiff-appellant. Of counsel on the brief were MELANIE JONES TOTMAN and DISMAS LOCARIA, of Washington, DC.

JESSICA R. TOPLIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before PROST, WALLACH, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Eric Cunningham filed a petition with the Merit Systems Protection Board ("MSPB") to enforce a settlement agreement he entered into with the United States Office of Personnel Management ("OPM"), his former employer. Mr. Cunningham alleged that OPM disclosed details about him to another employer and thereby violated a confidentiality provision in that agreement. The MSPB found that OPM breached the agreement and offered Mr. Cunningham the only remedies its jurisdiction permitted: rescission and reinstatement. When Mr. Cunningham declined to pursue those remedies, the MSPB dismissed his petition.

Mr. Cunningham then filed suit against the United States in the Court of Federal Claims ("Claims Court"), seeking monetary damages for breach of contract. The court found that it had subject matter jurisdiction under the Tucker Act over the suit, *Cunningham v. United States*, 108 Fed. Cl. 208, 213–21 (2012), but ruled that the suit was barred by res judicata because the MSPB had already issued a final judgment on the merits of Mr. Cunningham's claim, *id.* at 221–24.

While we agree with the Claims Court that it possessed jurisdiction under the Tucker Act to hear Mr. Cunningham's claim for breach of contract, we do not agree that res judicata bars his claim. Because jurisdictional limits on the MSPB's remedial authority did not permit Mr. Cunningham to seek monetary damages for OPM's breach of contract, the MSPB's prior judgment does not preclude his suit in the Claims Court. Accordingly, we reverse the judgment of the Claims Court and remand for proceedings consistent with this opinion.

## BACKGROUND

Mr. Cunningham worked as a criminal investigator in the Inspector's Office of OPM from February 23, 2004 until his termination on January 22, 2005. He appealed his termination to the MSPB, alleging that OPM discriminated against him based on his marital status. During the second day of an administrative hearing at the MSPB, Mr. Cunningham and OPM agreed to a settlement.

Under the terms of the settlement agreement, Mr. Cunningham agreed to withdraw his appeal with prejudice, while OPM agreed to pay him $50,000. The agreement designated the Director of OPM's human resources office as the contact point for reference inquiries about Mr. Cunningham's service as a criminal investigator. In response to such inquiries, the Director was permitted to disclose only Mr. Cunningham's "date of employment and years of Federal service." J.A. 41. The agreement also required OPM to remove Mr. Cunningham's termination letter from his personnel file. Furthermore, the agreement included a confidentiality provision that prohibited both parties from disclosing the terms of the agreement and prohibited Mr. Cunningham from disclosing information about his grievance. On October 28, 2005, the MSPB entered the settlement agreement on the record for purposes of enforcement.

In July 2006, Mr. Cunningham was offered a position as a background investigator with the United States Investigation Service ("USIS"), a private company that contracts with federal agencies to perform background investigations. After completing a background investigation, USIS told Mr. Cunningham to report to the next training class in the fall of 2007. USIS also informed Mr. Cunningham that it anticipated receiving a new contract from OPM, and that OPM would conduct its own background investigation.

Mr. Cunningham reported for training on October 22, 2007. Less than one week after Mr. Cunningham had commenced initial training, the general manager of USIS informed Mr. Cunningham that he was being suspended without pay at the direction of OPM's security office. Mr. Cunningham remained suspended until February 1, 2008, when he was terminated by USIS. Following his termination, he contacted OPM and requested a copy of his personnel file. The file contained a document showing that two OPM employees—neither of whom was the Director of Human Resources—had discussed Mr. Cunningham's termination and subsequent appeal to the MSPB with OPM's background investigator.

On March 24, 2008, Mr. Cunningham filed a petition with the MSPB to enforce the settlement agreement with OPM. On July 16, 2008, an administrative judge found that OPM had materially breached the agreement. The administrative judge explained, however, that enforcement would not be an effective remedy because the MSPB lacked authority to award damages for OPM's breach. Instead, Mr. Cunningham was only entitled to rescind the agreement and reinstate his initial appeal. The administrative judge noted that, if Mr. Cunningham elected to rescind the settlement agreement and reinstate his appeal, he would be required to reimburse the government for the $50,000 payment made to him under the terms of the settlement.

On January 23, 2009, the MSPB issued a final order adopting the findings of the administrative judge. The MSPB sent the case back to the administrative judge to provide Mr. Cunningham with the option of rescinding the agreement and reinstating his appeal. On February 9, 2009, Mr. Cunningham informed the administrative judge that he only wanted compensation for his damages caused by OPM's breach of the settlement agreement; he did not want his appeal to be reinstated. The next day,

the administrative judge dismissed Mr. Cunningham's petition for enforcement.

On February 19, 2010, Mr. Cunningham filed a breach-of-contract suit in the Claims Court, seeking monetary damages for OPM's breach of the settlement agreement.[1] Although the Claims Court found that it possessed subject matter jurisdiction under the Tucker Act, *Cunningham*, 108 Fed. Cl. at 213–21, it dismissed the suit on the basis of res judicata, *id.* at 221–24.

Mr. Cunningham filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

On appeal, the government challenges the Claims Court's jurisdiction over the suit, arguing that the settlement agreement is a consent decree over which the MSPB has exclusive jurisdiction. Mr. Cunningham challenges the Claims Court's decision that his suit is barred by res judicata. We review de novo the Claims Court's decision that it possessed subject matter jurisdiction over Mr. Cunningham's claim. *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011); *Adair v. United States*, 497 F.3d 1244, 1250 (Fed. Cir. 2007). We also review de novo the Claims Court's dismissal of Mr. Cunningham's claim on the basis of res judicata. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).

---

[1] Mr. Cunningham seeks "[p]ast and future economic damages flowing from the breach of the settlement by the Agency, totaling the amount he would have earned at USIS from the date of his suspension without pay to the date of his retirement, plus interest and benefits." J.A. 41.

## I

Because the United States has sovereign immunity, it can be sued only if it expressly consents to suit. *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009). The United States has waived sovereign immunity for breaches of contract via the Tucker Act, which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

We have long held that disputes over settlement agreements are governed by contract principles. *See Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988). However, we have only recently addressed the circumstances in which Tucker Act jurisdiction may extend to a settlement agreement between a federal agency and one of the agency's employees. In *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011) and *VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012), we found that the Claims Court possessed jurisdiction under the Tucker Act to entertain claims alleging breaches of settlement agreements for Title VII complaints. Under our decisions in *Holmes* and *VanDesande*, the Claims Court has subject matter jurisdiction over Mr. Cunningham's suit.

## A

In *Holmes*, we resolved a split of authority in the Claims Court over whether Tucker Act jurisdiction extends to a claim alleging breach of an agreement that settled an employee's Title VII action. The majority view at the time was that the Claims Court lacked jurisdiction over such claims because Title VII's statutory scheme provided for exclusive review of Title VII actions in district courts. *See Griswold v. United States*, 61 Fed. Cl. 458, 465 (2004) (collecting cases) ("This court has consist-

ently held that it lacks jurisdiction to hear claims alleging the breach of a Title VII settlement agreement due to the comprehensive statutory scheme established under Title VII of the Civil Rights Act."). We rejected that view and held that a suit against the government alleging breach of a settlement agreement is fundamentally a suit to enforce a contract and therefore within the reach of the Claims Court's jurisdiction under the Tucker Act. *Holmes*, 657 F.3d at 1312.

At the same time, we cautioned that the alleged breach of a settlement agreement does not necessarily give rise to Tucker Act jurisdiction. The plaintiff must "demonstrat[e] that the agreement[] could fairly be interpreted as contemplating money damages in the event of a breach." *Id.* at 1315. A settlement that involved "purely non-monetary relief"—such as a transfer from one office to another—would not suffice for establishing Tucker Act jurisdiction. *Id.* The plaintiff in *Holmes* had alleged that the Department of the Navy (the "Navy") breached two agreements settling Title VII employment actions. Under the terms of the settlement agreements, the Navy agreed to expunge a suspension letter from Mr. Holmes's personnel file and to document that he had resigned for personal reasons. *Id.* The Navy also agreed to provide Mr. Holmes with a "neutral reference" in response to inquiries from future employers. *Id.* at 1316. Based on these terms, we found that the settlement agreements contemplated money damages.

> We think that, in the context of the two agreements, the purpose of documenting and expunging Mr. Holmes's record clearly was to prevent Mr. Holmes from being denied future employment based on his record as the Navy maintained it prior to the agreements. In short, the agreements inherently relate to monetary compensation through relationship to Mr. Holmes's future employment. Further, there is no language in the agreements

> indicating that the parties did not intend for money damages to be available in the event of breach.

*Id.*

In *Holmes*, the government argued that one of the agreements at issue was a consent decree over which the Claims Court could not exercise jurisdiction. *Id.* at 1316. We disagreed with the government's characterization of the agreement and thus declined to address the question of whether the Claims Court could exercise jurisdiction over a claim alleging a violation of a consent decree. *Id.* But not long after our decision in *Holmes*, we addressed the relationship between consent decrees and Tucker Act jurisdiction in *VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012).

In *VanDesande*, the plaintiff sought damages in the Claims Court for her federal employer's breach of a settlement agreement. The agreement, which settled a Title VII claim, had been incorporated into a final order by an EEOC administrative law judge. The Claims Court dismissed the plaintiff's suit on the basis that Tucker Act jurisdiction did not extend to a settlement agreement that had "been incorporated in a consent decree entered by another court or administrative entity." *Id.* at 1347.

We reversed, holding that "a settlement agreement, even one embodied in a decree, 'is a contract within the meaning of the Tucker Act.'" *Id.* at 1351 (quoting *Angle v. United States*, 709 F.2d 570, 573 (9th Cir. 1983)). We noted that the Supreme Court has recognized that consent decrees have a "dual character," possessing attributes of both contracts and judicial orders. *VanDesande*, 673 F.3d at 1349 (citing *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 239 (1975)). "The legal status of a Title VII consent decree," we explained, "will depend upon the nature of the case." *Id.* at 1348. When a plaintiff seeks to obtain the benefit of the bargain struck by the plaintiff and the government in an underlying settlement

agreement, the plaintiff is enforcing a contract. *See id.* at 1350. "If . . . a settlement agreement was no longer enforceable as a contract once incorporated into a consent decree, the effect would be to divest the Court of Federal Claims of its Tucker Act jurisdiction by the simple act of a court or agency adopting the agreement. We are unaware of any act of Congress that would allow for such an outcome." *Id.*; *see also Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014) (transferring a federal employee's claim alleging a breach of a Title VII settlement agreement from a district court to the Claims Court because permitting the district court to reserve exclusive enforcement of the settlement agreement would "reduce the scope" of the Claims Court's jurisdiction and thus "violate the time-honored rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction").

## B

Under our decisions in *Holmes* and *VanDesande*, the Claims Court possesses subject matter jurisdiction to hear Mr. Cunningham's breach-of-contract claim.

The circumstances of OPM's alleged breach are substantially similar to the circumstances of the Navy's alleged breach in *Holmes*. As in *Holmes*, the purpose of the key settlement terms is "to prevent [the former employee] from being denied future employment based on his record as the [agency] maintained it prior to the agreement[]." *Holmes*, 657 F.3d at 1316. The settlement agreement here limited what information OPM could disclose and required OPM to remove Mr. Cunningham's termination letter from his personnel file. Mr. Cunningham, like the plaintiff in *Holmes*, alleges that his former government employer damaged his future employment prospects by breaching the agreement. Moreover, there is no language in the agreement "indicating that the parties did not intend for money damages to

be available in the event of breach." *Id.* at 1316. We thus find that the settlement agreement between Mr. Cunningham and OPM "could fairly be interpreted as contemplating money damages in the event of a breach." *See id.* at 1315.

The government points to two differences between the settlement agreements at issue in *Holmes* and the settlement agreement at issue in this case. First, the agreements in *Holmes* were not incorporated into consent decrees, whereas the agreement here was adopted in a consent decree by the MSPB. Second, the agreements in *Holmes* settled Title VII claims, whereas the agreement here settled a claim arising under the Civil Service Reform Act ("CSRA"), which defines the authority of the MSPB. *See* 5 U.S.C. § 7512. Neither difference warrants depriving the Claims Court of subject matter jurisdiction.

We answered the government's first point in *VanDesande*. Like the plaintiff in *VanDesande*, Mr. Cunningham is seeking to enforce the underlying settlement agreement in order to obtain the benefit of his bargain with his former government employer; he is not asking the Claims Court to enforce the MSPB order. The fact that the settlement agreement was incorporated into a decree does not strip the agreement of its "character" as a contract. *See VanDesande*, 673 F.3d at 1348–50.

As for the government's characterization of *VanDesande* as depending "upon the specific statutory scheme under which [the] original claim arose," Appellee's Br. 22, we see no language in *VanDesande* that ties its holding to the specific statutory scheme of Title VII. On the contrary, we suggested that "the nature of the case"—the content of the underlying agreement and the manner in which the plaintiff sought to enforce that agreement—determined whether the Claims Court had Tucker Act jurisdiction. *VanDesande*, 673 F.3d at 1347,

1350–51. That reasoning applies with equal force to an agreement settling a dispute arising under the CSRA.

We also find unpersuasive the government's contention that the "comprehensive scheme" of the CSRA bars Mr. Cunningham from seeking monetary damages for breach of contract in the Claims Court. In *Holmes*, we rejected that notion as it applied to Title VII. *See Holmes*, 657 F.3d at 1312. As the Claims Court correctly noted here, the remedial schemes of the CSRA and Title VII are similar. *Cunningham*, 108 Fed. Cl. at 215 ("In much the same way as the CSRA established a 'comprehensive and integrated review scheme' for the resolution of federal personnel disputes, Title VII established an 'exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'" (quoting *United States v. Fausto*, 484 U.S. 439, 454 (1988); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976))).

Moreover, the adjudication of Mr. Cunningham's claim for monetary relief does not involve the review of a personnel action. *See Fausto*, 484 U.S. at 454 (holding that the comprehensive scheme of the CSRA precludes Tucker Act jurisdiction over the review of an agency's personnel determination); *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992) (holding that the Little Tucker Act does not confer jurisdiction over a settlement agreement that requires the court to "review the underlying personnel action"). Mr. Cunningham's suit does not require the Claims Court to review the facts or law underlying his initial discrimination grievance against OPM. Nor does his suit demand equitable relief that might require OPM to undertake a personnel action. Rather, Mr. Cunningham is seeking money damages to compensate for income he would have earned from his private employer had OPM not breached the settlement agreement. *See Holmes*, 657 F.3d at 1316 (emphasis added) (explaining that a statutory scheme does not "preclude a suit for money damages in the event of breach

that is separate from, or in addition to, the relief the regulation provides").

Therefore, we hold that Mr. Cunningham's suit for money damages under the Tucker Act falls within the Claims Court's jurisdiction.

## II

Having determined that the Claims Court possesses subject matter jurisdiction over Mr. Cunningham's breach-of-contract claim, we turn to the question of whether the claim is barred by res judicata. We decide that it is not.

A claim is barred by res judicata when "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). The Claims Court found that Mr. Cunningham's suit satisfied all of the elements of res judicata: the parties in the suit are the same parties that appeared before the MSPB, *Cunningham*, 108 Fed. Cl. at 222; the MSPB issued a final judgment on the merits of Mr. Cunningham's petition to enforce the settlement agreement, *id.*; and the two claims are based on the same set of transactional facts—the same contract and the same agency conduct, *id.* at 222–24. Although we do not disagree with the Claims Court's application of the three res judicata elements to Mr. Cunningham's claim, we find that an exception to the rule is applicable here.

When applying the rule of res judicata, we have consistently looked to the Restatement (Second) of Judgments for guidance. *See, e.g.*, *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1362–63 (Fed. Cir. 2010); *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed. Cir. 2008); *Ammex*, 334 F.3d at 1056; *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1313–14 (Fed. Cir. 1983).

The Restatement and other authorities recognize that res judicata should not bar a claim when a court's remedial authority in the first action prevented the plaintiff from seeking the relief sought in the second action.

> [T]he general rule of [res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant[,] [when] [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief . . . .

Restatement (Second) of Judgments § 26(1)(c).[2]

---

[2]    *See also id.* § 26 cmt. c ("The general rule of [res judicata] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first."); Charles Allen Wright, et al., *Federal Practice & Procedure* § 4412 (2d ed.) ("When special jurisdictional limitations prevent assertion of all matters arising out of a single transaction in one action, a

"For purposes of res judicata," the Claims Court stated, "the remedy sought by the plaintiff is irrelevant in determining whether two actions are based upon the same transactional facts." *Cunningham*, 108 Fed. Cl. at 223. While that may be true, it is the remedies *available* to the plaintiff in a forum of limited jurisdiction, not the remedies *sought* by the plaintiff, that determine whether res judicata bars a subsequent claim in a different forum. *See* Restatement (Second) of Judgments § 26(1)(c); *cf. United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1734 (2011) (Sotomayor, J., concurring) ("The jurisdictional scheme governing actions against the United States often requires . . . plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts."). Here, the remedy available in the Claims Court—damages for OPM's breach of the settlement agreement—was not available in the MSPB due to the agency's limited jurisdiction.

Under the authority granted to the MSPB under the CSRA, the MSPB could only enforce compliance with the terms of the settlement agreement between Mr. Cunningham and OPM. *See* 5 U.S.C. § 1204(a)(2) (granting the MSPB the power to compel a federal agency to comply with orders of the Board). The MSPB does not possess authority to award monetary damages for the breach of a settlement agreement. *Foreman v. Dep't of Army*, 241 F.3d 1349, 1352 (Fed. Cir. 2001). This jurisdictional barrier prevented Mr. Cunningham from seeking complete relief for OPM's breach of contract. He is there-

---

second action is not precluded. For federal courts, the limitations may be embodied in special jurisdictional statutes that prove inadequate to support resolution of all disputes arising out of the same setting, or may result from the inherently limited character of the first proceeding.").

fore not barred from pursuing a second claim, against the same party based on the same set of transactional facts, in a court that has the authority to grant the relief that was unavailable to him in the first action. *See* Restatement (Second) of Judgments § 26(1)(c); *see also Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir. 2002) (holding that res judicata did not bar an unfair-labor-practice claim in federal district court that had previously been litigated to a final judgment before the National Labor Relations Board because the Board was "not authorized to award full compensatory or punitive damages to individuals affected by the unfair labor practice").

The government acknowledges the exception described in Restatement (Second) of Judgments § 26(1)(c) but suggests that the exception "should not apply in this instance [because the] exception is primarily triggered when there are limitations on the jurisdiction of a system of courts." Appellee's Br. 38 n.9. We see no reason, however, to treat limitations on the jurisdiction of an agency differently than limitations on the jurisdiction of a court for the purposes of res judicata. Indeed, an agency's decisions have preclusive effect only when that agency is "acting in a judicial capacity." *United States v. Utah Constr. & Min. Co.*, 384 U.S. 394, 422 (1966). It would be odd to apply the rule of res judicata, but not the rule's exceptions, to the decision of an agency that is acting like a court.

The Restatement agrees, stating that "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, *subject to the same exceptions and qualifications*, as a judgment of a court." Restatement (Second) of Judgments § 83(1) (emphasis added). If anything, the Restatement suggests that courts should be more cautious before giving preclusive effect to the final determinations of administrative agencies. *See id.* § 83 cmt. f ("The array of exceptions to the rules of res judicata that may be

applicable to administrative determinations is at least as broad as with respect to judicial tribunals."); *id.* § 83 cmt. g ("[T]he exceptions stated in § 26(1)(c) and (d) are particularly important in considering claim preclusion with respect to an administrative agency determination.").

Our decision in *Phillips/May Corp. v. United States*, 524 F.3d 1264 (Fed. Cir. 2008), upon which both the Claims Court and the government rely, is consistent with the exception in § 26(1)(c) of the Restatement. In that case, a contractor pursued a breach-of-contract claim in the Claims Court after having litigated nine other claims arising out of the same construction contract at the Board of Contract Appeals ("BCA"). *Phillips/May*, 524 F.3d at 1266–67. We affirmed the decision of the Claims Court that the contractor's claim was barred by claim preclusion. *Id.* at 1273.

Unlike Mr. Cunningham at the MSPB, the contractor in *Phillips/May* could have obtained complete relief at the BCA. The Contract Disputes Act "established the agency boards and the Court of Claims as alternative initial venues for the litigation of claims both for equitable adjustment and for breach of contract." *Id.* at 1269. Under the Act, the BCA "may grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims." 41 U.S.C. § 7105(e)(2). The contractor's first stop, the BCA, had remedial jurisdiction to award the same relief as the Claims Court. Mr. Cunningham's first stop, by contrast, did not possess jurisdiction to award the same relief as the Claims Court. The MSPB could not award monetary damages for breach of contract. *See Foreman,* 241 F.3d at 1352.

Although Mr. Cunningham is suing the same party for the same breach of contract, he is entitled to seek a form of relief—money damages—that was unavailable to

him before the MSPB due to limits on the agency's remedial jurisdiction. Therefore, the doctrine of res judicata does not bar Mr. Cunningham's breach-of-contract claim in the Claims Court.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Claims Court dismissing Mr. Cunningham's complaint. The case is remanded to the Claims Court for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

Each party shall bear its own costs.